KIBLER FOWLER & CAVE LLP
John D. Fowler (SBN 271827)
jfowler@kfc.law
Tracy Rane (SBN 192959)
trane@kfc.law
Kevin J. Cammiso (SBN 316540)
kcammiso@kfc.law
11100 Santa Monica Blvd., Suite 360
Los Angeles, California 90025
Telephone:   (310) 409-0400
Facsimile:    (310) 409-0401

*Attorneys for Plaintiff*
*Evil Genius Games, Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| EVIL GENIUS GAMES, INC., a Delaware corporation,<br><br>   Plaintiff,<br><br>  v.<br><br>NETFLIX CPX, LLC, a Delaware limited liability company; NETFLIX CPX INTERNATIONAL, B.V., a Netherlands business entity; and DOES 1 through 10, inclusive,<br><br>   Defendants. | CASE NO.<br><br>**COMPLAINT FOR:**<br><br>1. **BREACH OF CONTRACT;**<br>2. **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;**<br>3. **QUANTUM MERUIT;**<br>4. **UNJUST ENRICHMENT; and**<br>5. **DECLARATORY RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Evil Genius Games, Inc. ("Plaintiff"), demanding trial by jury, complains and alleges on information and belief as follows:

## INTRODUCTION

1. Defendants Netflix CPX, LLC and Netflix CPX International, B.V. (collectively, "Netflix") have—without any legitimate basis—accused Plaintiff of breaching the parties' Overall Merchandising License Agreement (the "Agreement") in a bad faith attempt to terminate the Agreement, refuse to pay Plaintiff for its extensive services, and steal Plaintiff's intellectual property. Plaintiff brings this case to prevent Netflix from doing so.

## PARTIES AND VENUE

2. Plaintiff is a Delaware corporation with its principal place of business located at 7 West 41st Street, #208, San Mateo, California 94403. Plaintiff is a prolific developer and publisher of tabletop roleplaying games ("TTRPG") based on major motion picture franchises. Its Everyday Heroes™ concept is a system for a wide range of officially licensed movie franchise campaigns, including blockbuster hits such as *Rambo*, *Highlander*, *Total Recall*, and *Kong: Skull Island*. This system is required to understand and play all of Plaintiff's officially licensed movie franchise games. Plaintiff is a minority owned business that was drawn to Netflix in part because of its self-proclaimed commitment to diversity, equity, and inclusion initiatives.

3. On information and belief, Defendant Netflix CPX, LLC is a Delaware limited liability company with its principal place of business located at 5808 West Sunset Boulevard, Los Angeles, California 90028.

4. On information and belief, Defendant Netflix CPX International, B.V. is a limited liability company organized under the laws of the Netherlands with its principal place of business located at Karperstraat 8-10, 1075 KZ Amsterdam, the Netherlands.

5. Defendants Does 1 through 10 are sued by fictitious names as their true names are currently unknown to Plaintiff. Plaintiff will seek leave to amend this complaint to allege the true identities of these Defendants when the same have been ascertained.

6. Plaintiff is informed and believes that at all relevant times, all Defendants were the agents and/or co-conspirators of their co-defendants, and in doing the things hereinafter alleged, were acting within the course and scope of their authority as those agents and/or co-conspirators and with the permission and consent of their co-defendants.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over Plaintiff's copyright claims under 28 U.S.C. §§ 1331, 1332, and 1338.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c), and 28 U.S.C. § 1400(a) because the claims arise in this Judicial District and the Defendants transact business in this Judicial District.

## GENERAL ALLEGATIONS

### *Rebel Moon*

9. Zack Snyder is a successful filmmaker, best known for directing and/or producing action and science fiction films such as *300* (2006), *Wonder Woman* (2017), *Justice League* (2017), and *Watchmen* (2009).

10. Years ago, Mr. Snyder developed the story for a *Star Wars* spinoff known as *Rebel Moon*. Mr. Snyder pitched the project to Lucasfilm Ltd. LLC, but the company passed.

11. After Lucasfilm was bought by Disney in 2012, Mr. Snyder pitched the project again. But Disney, too, passed.

12. His third pitch, however, was successful. Mr. Snyder purportedly told Netflix that if they picked up *Rebel Moon*—which he billed as an epic space opera

1  film trilogy—it would be the next *Star Wars*. Netflix jumped at the opportunity and
2  agreed to distribute the first two films in the anticipated trilogy.
3      13.    Shortly thereafter, Netflix and Mr. Snyder began discussing ways they
4  could build an entire *Rebel Moon* franchise. In addition to *Rebel Moon* themed
5  sequels, television shows, graphic novels, and other potential content and
6  merchandise, Mr. Snyder expressly requested that there be a *Rebel Moon* based
7  TTRPG. To Mr. Snyder, a TTRPG was critical to the development of the entire
8  *Rebel Moon* universe since it would provide content for future *Rebel Moon*
9  derivatives.

*The Agreement*

11      14.    As soon as Plaintiff caught wind that Netflix was looking to release a
12  *Rebel Moon* based TTRPG, it started working on a pitch, given its prominence in the
13  TTRPG industry. This included creating mock cover art and character illustrations
14  for the game, developing some potential story lines, and even producing a miniature
15  TTRPG that Netflix executive could play at the pitch.
16      15.    Netflix and Mr. Snyder were blown away. The parties met multiple
17  times thereafter to discuss the project in detail and negotiate the terms of their
18  partnership.
19      16.    Eventually, Plaintiff and Netflix executed a written Overall
20  Merchandising License Agreement (the "Agreement") on March 22, 2023, which
21  was made effective as of February 1, 2023.
22      17.    Pursuant to Section 1 and Schedule A of the Agreement, Netflix
23  granted Plaintiff a license to use the "(a) name and logo of the Title [*Rebel Moon*];
24  (b) character names from the Title; and (c) graphic assets or other artwork relating to
25  the Title" ("Licensed Property") to "design, produce, manufacture, advertise,
26  market, distribute, and sell" the following *Rebel Moon* themed products: (i) "Role
27  Playing Game System (sourcebooks, box sets, custom dice, 3D miniatures,
28  Cinematic adventures, GM Screen, Game related Music, (collectively, 'RPG') and

3
COMPLAINT

other RPG-related accessories)"; and (ii) "RPG-related apparel and other goods (e.g., t-shirts, hoodies, stickers, hats, drinkware), each category as expressly approved by Licensor (Netflix) in its sole discretion" ("Licensed Articles").

18. Given the hype surrounding the *Rebel Moon* franchise, Plaintiff reasonably expected the Agreement to be incredibly lucrative for both parties. That is why Plaintiff agreed to pay Netflix: (1) a $7,500 advance within thirty days of signing the Agreement; (2) $7,500 by February 1, 2024; (3) $10,000 by February 1, 2025; and (4) share profits derived from the Licensed Articles with Netflix, as set forth in Schedule A to the Agreement, in exchange for the right to use the Licensed Property.

### *The World Bible, Player's Guide, and Game Master's Guide*

19. When the parties started working with each other in early-2023, Netflix had a *Rebel Moon* movie script, some rough ideas for the *Rebel Moon* universe, and some cursory graphical assets. But the script was missing background information vital to the story as a whole and to the world. Alien races and planets were not named or described, royal characters and their lineages were missing, and there was no clear storyline for how the *Rebel Moon* universe originated. Netflix did not even deliver Plaintiff any official *Rebel Moon* trademarks or logos, as required by Section 1 of the Agreement, and instead instructed Plaintiff to pluck them "from the Internet."

20. In just a few months, Plaintiff supplied *all the missing pieces* and created a cohesive backstory for the entire *Rebel Moon* franchise, dubbed the "World Bible." For example, where the script introduced a character merely as "Alien 1," Plaintiff created the alien's name, age, family tree, origin, and the history of the planet it came from. The primary purpose of the World Bible was to serve as a resource for Plaintiff's game creators and writers to develop game rules, characters, mechanics, lore, adventures, and other materials related to the *Rebel*

*Moon* TTRPG. The World Bible was not a Licensed Article, but rather a confidential, in-house document for use by Plaintiff only.

21. Mr. Snyder (and multiple Netflix executives) routinely praised the company's work and was so enamored with the 228-page World Bible that he indicated that he planned on incorporating substantial elements of it into his so-called "Snyderverse"—a fictional universe where the story lines for his various film projects diverged and co-existed. In a podcast that was published to YouTube on March 19, 2023, Mr. Snyder told viewers:

> The one thing that I'm having a really good time with—and I don't really know if I'm supposed to talk about it—is this RPG that we're doing that is just literally insane, and so immersive and so intense and so huge. There's more coming, but all I'll say is that it was pitched to me—because I've always wanted to do an RPG—like, "well, we could do it at this scale, or we could do it at ridiculous scale." And I was like, "ridiculous scale is clearly the scale that we should be doing it."

As of the date of this filing, the podcast remains viewable on YouTube at the following web address:

https://www.youtube.com/watch?v=mzKY20dly6c&t=4115s.

22. Mr. Snyder and Netflix even indicated that some of Plaintiff's materials have or would be incorporated into the *Rebel Moon* film and other derivative works, such as graphic novels, podcasts, animated series, and a novelization of the film (which is slated for release on December 26, 2023).

23. Netflix demanded that the product be ready by the launch of the film on December 22, 2023, so Plaintiff stopped every other project to prioritize developing the game (causing it to lose potential other opportunities). By May of 2023, the *Rebel Moon* TTRPG and 228-page World Bible were complete, with a 430-page "Player's Guide" and 337-page "Game Master's Guide" in the final editing process. The speed astounded Netflix executives, and Plaintiff's work exceeded everyone's expectations.

24. Plaintiff also paid Netflix all advances required under the Agreement, so the TTRPG was (and remains) effectively nearly ready for market months ahead of schedule.

### *The Alleged Breach*

25. Nevertheless, just weeks after the work was finalized and turned over to Netflix, Netflix did a complete about face, and accused Plaintiff of breaching the Agreement's confidentiality provisions—"and Netflix's trust"—by allegedly releasing confidential *Rebel Moon* content at a trade show and then disclosing unapproved artwork for the *Rebel Moon* game to retailers. Netflix then used this as pretext to terminate the Agreement, assert ownership over Plaintiff's intellectual property, halt the project, and prevent the game from being released (or potentially release it themselves to avoid sharing the profits with Plaintiff). Netflix's accusations are baseless.

26. On February 13, 2023—over one month before the Agreement was even signed—Netflix and Plaintiff discussed presenting the *Rebel Moon* TTRPG at the Game Manufacturers Association Exposition ("GAMA"), which took place April 24-27, 2023. The purpose of presenting the game at GAMA was clearly to create some industry buzz about the game, and to facilitate a market for the game to make money once released.

27. During one of those conversations—which was recorded with consent by all—Netflix agreed to disclose certain artwork at GAMA to solicit potential retailers and distributors. Plaintiff sent the artwork in question to Netflix ahead of the event on March 19, 2023 and Netflix never voiced any issues whatsoever, thereby approving the artwork in compliance with the Agreement. That artwork (which consisted solely of the cover graphic and sample characters that Plaintiff created to pitch to Netflix in December of 2022) was created *before* the effective date of the Agreement. The artwork was not original to Netflix, and was little more than a sample to be used in pitching the game.

28. Documents containing the artwork were then disseminated *by two Netflix employees* at GAMA to over 100 potential retailers. In turn, one of the Netflix employees co-presented this information with Plaintiff's Chief Executive Officer, David Scott. They disseminated the artwork as a business decision. Netflix understood that in order to draw attention to the *Rebel Moon* TTRPG and pave the way for future monetization, it needed to participate in retail specific trade shows which are designed to solicit interest and take preorders for the product, as is customary.

29. In light of the above, Netflix cannot credibly claim that Plaintiff materially breached the Agreement's confidentiality provisions since, among other things: (a) Mr. Snyder had already publicized the existence of the *Rebel Moon* TTRPG in his March 19, 2023 podcast appearance; (b) the very same artwork at issue had already been distributed *by Netflix employees* at GAMA on April 24-27, 2023 to over 100 retailers; (c) the artwork was little more than a pitch material recycled for GAMA, and (d) various *Rebel Moon* word marks and logos were already widely available on the internet (Netflix even instructed Evil Genius to use these materials rather than delivering official Licensed Property to Evil Genius per Schedule A of the Agreement).

30. Nevertheless, in a letter dated May 25, 2023, Netflix accused Plaintiff of breaching the Agreement's confidentiality provisions, declared a material breach, and terminated the Agreement.

31. On June 9, 2023, Netflix sent another letter to Plaintiff claiming (for the first time) that the World Bible "belongs solely and exclusively to Netflix," and demanding that Plaintiff "cease using and return all Licensed Property and Netflix intellectual property, including the *Rebel Moon* Bible, and certify destruction of any electronic materials." Based on this letter, it became clear that Netflix was simply using the alleged breach and termination to hijack Plaintiff's intellectual property and prevent Plaintiff from releasing the game.

32. Netflix even conceded that it "probably could have looked past" the incident were it not for certain individuals disliking Mr. Scott's tone and response to Netflix's concerns over confidentiality. Netflix felt like Mr. Scott did not take the issue seriously, which caused Netflix to supposedly "lose trust" in Plaintiff overnight, and go back to the contract to look for a way out of the Agreement. In other words, Netflix did not genuinely believe Plaintiff materially breached the Agreement. Netflix was simply upset with Mr. Scott and used this turn of events as pretext to terminate the Agreement, take Plaintiff's intellectual property, and prevent Plaintiff from obtaining the benefit of the bargain.

33. Despite all of the harsh, accusatory rhetoric and allegations that Plaintiff breached the Agreement, Netflix offered to pay Plaintiff $50,000 to basically go away, forgive Netflix for its pretextual hijacking of the project, and hand over the game to them.

34. The parties subsequently tried to resolve this dispute amicably, but to no avail. Plaintiff, therefore, brings this action to compel Netflix's performance of the Agreement or, alternatively, to rescind the Agreement, reclaim its intellectual property, and seek damages for Netflix's bad faith conduct.

### FIRST CAUSE OF ACTION
### Breach of Contract
### (Plaintiff against All Defendants)

35. All previous allegations are realleged and incorporated herein by reference.

36. Plaintiff and Defendants executed the Agreement on March 22, 2023, which was made effective as of February 1, 2023  The Agreement is a valid and enforceable written contract with sufficiently certain terms.

37. Defendants received adequate consideration for entering the Agreement, and the Agreement is a just and reasonable contract.

//

38. Plaintiff performed all of its obligations under the Agreement, or was excused from performance.

39. Defendants breached the Agreement by: (a) unilaterally terminating the Agreement without cause, then unlawfully preventing Evil Genius from completing the project and fully performing under the Agreement, and therefore preventing Evil Genius from releasing and monetizing the game; and (b) failing to deliver the Licensed Property pursuant to Section 1 and Schedule A of the Agreement.

40. Since *Rebel Moon* is a new franchise, the total profits Plaintiff would earn from exploiting the TTRPG are very substantial, and dependent in many respects on the success of the film. As a result, Plaintiff does not have an adequate remedy at law and is entitled to specific performance of all terms, conditions, and provisions of the Agreement.

41. As an alternative to specific performance, Plaintiff is entitled to rescind the Agreement and seek restitution since Netflix has accepted all the benefits under the Agreement, but failed to deliver the Licensed Property and refused to permit Plaintiff to actually release the Rebel Moon TTRPG and enjoy the benefit of its bargain. As a result, Defendants' breach is so material and substantial that it has affected the very essence of the Agreement, constitutes a material failure of consideration, and totally defeats the purpose of the Agreement, thus warranting rescission. Service of this Complaint on Defendants shall serve as Plaintiff's notice of rescission and offer to restore any benefits received under the contact pursuant to California Civil Code § 1691.

42. Alternatively, as a direct and proximate result of Defendants' breaches, Plaintiff seeks general and compensatory damages in an amount that is in excess of the minimum jurisdiction of this Court.

//
//
//

## SECOND CAUSE OF ACTION

### Breach of Implied Covenant of Good Faith and Fair Dealing

### (Plaintiff against All Defendants)

43. All previous allegations are realleged and incorporated herein by reference.

44. In every contract or agreement there is an implied covenant of good faith and fair dealing. That means that each party will not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract.

45. Plaintiff and Defendants executed the Agreement on March 22, 2023, which was made effective as of February 1, 2023 The Agreement is a valid and enforceable written contract.

46. Plaintiff performed all of its obligations under the Agreement, or was excused from performance.

47. Defendants breached the implied covenant of good faith and fair dealing by baselessly accusing Plaintiff of breaching the Agreement's confidentiality provisions, then using this alleged breach as pretext to terminate the Agreement and assert ownership over Plaintiff's intellectual property.

48. As a direct and proximate result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiff has suffered damages in an amount that is in excess of the minimum jurisdiction of this Court.

## THIRD CAUSE OF ACTION

### Quantum Meruit

### (Plaintiff against All Defendants)

49. All previous allegations are realleged and incorporated herein by reference.

50. Defendants requested, expressly or impliedly, that Plaintiff create a comprehensive World Bible that could be used to link the "Snyderverse" together and that Plaintiff create a *Rebel Moon* TTRPG with accompanying Player's Guide

and Game Master's Guide.

51. Plaintiff performed these services as requested, as evidenced by the fact that it spent months working around the clock to complete and deliver the *Rebel Moon* TTRPG to Netflix, which is now essentially ready for release.

52. Nevertheless, Defendants accused Plaintiff of breaching the Agreement's confidentiality provisions, then used this alleged breach as pretext to terminate the Agreement, assert ownership over Plaintiff's intellectual property, halt work on the *Rebel Moon* TTRPG, and prevent the game from being released.

53. As a result, Defendants have failed and refused to pay Plaintiff for its services, the direct and proximate result of which Plaintiff has suffered damages in an amount that is in excess of the minimum jurisdiction of this Court.

## **FOURTH CAUSE OF ACTION**

### **Unjust Enrichment**

### **(Plaintiff against All Defendants)**

54. All previous allegations are realleged and incorporated herein by reference.

55. Plaintiff and Netflix executed the Agreement on March 22, 2023, which was made effective as of February 1, 2023  The Agreement is a valid and enforceable written contract.

56. The contracting parties intended that Plaintiff would benefit from the Agreement and that it would stand to receive the benefit of the promised performance.

57. Defendants accepted the benefit of Plaintiff's performance, including by receiving a comprehensive World Bible that could be used to link the "Snyderverse" together and a *Rebel Moon* TTRPG, at Plaintiff's expense.

58. It would be inequitable for Defendants to retain the full value of the benefit of Plaintiff's services without compensating Plaintiff for its work.

//

59. As a result, Defendants have failed and refused to pay Plaintiff for its services, the direct and proximate result of which Plaintiff has suffered damages in an amount that is in excess of the minimum jurisdiction of this Court.

## FIFTH CAUSE OF ACTION

**Declaratory Relief**

**(Plaintiff against All Defendants)**

60. All previous allegations are realleged and incorporated herein by reference.

61. An actual dispute or controversy has arisen and exists between the parties regarding ownership of certain copyrightable works created by Plaintiffs, including but not limited to the World Bible, Player's Guide, and Game Master's Guide. Defendants contend that ownership of the intellectual property automatically vested in Netflix as a work made for hire or via assignment, as provided in Section 19 of the Agreement. Plaintiff, on the other hand, contends that these provisions do not apply, that certain works are outside the scope of the Agreement altogether, and that, in any event, Plaintiff may rescind the Agreement and reclaim any intellectual property Defendants claim that Plaintiff assigned or otherwise transferred to Defendants thereunder given Defendants' material breach of the Agreement.

62. A judicial declaration is necessary and appropriate at this time so that Plaintiff may ascertain its rights with respect to the intellectual property it created during its contractual relationship with Defendants. Specifically, Plaintiff seeks a declaration that it owns all right, title, and interest to any original works of authorship created by Plaintiff in connection with the Licensed Property.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

(a) Specific performance;

1     (b)     Alternatively, rescission;

2     (c)     Compensatory and general damages;

3     (d)     Constructive trust;

4     (e)     Restitution;

5     (f)     Pre- and post-judgment interest;

6     (g)     Declaratory relief;

7     (h)     Costs of this action; and

8     (i)     Any other and further relief that the Court considers just and proper.

Dated: September 28, 2023     KIBLER FOWLER & CAVE LLP

By:     /s/ John D. Fowler
    JOHN D. FOWLER
    TRACY B. RANE
    KEVIN J. CAMMISO
    Attorneys for Plaintiff
    Evil Genius Games, Inc.

## DEMAND FOR JURY TRIAL

Plaintiff Evil Genius Games, Inc. hereby demands a trial by jury.

Dated:  September 28, 2023

KIBLER FOWLER & CAVE LLP

By:     /s/ John D. Fowler
JOHN D. FOWLER
TRACY B. RANE
KEVIN J. CAMMISO
Attorneys for Plaintiff
Evil Genius Games, Inc.