Neema T. Sahni (Bar No. 274240)
NSahni@cov.com
J. Hardy Ehlers (Bar No. 287528)
JEhlers@cov.com
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067-4643
Telephone: (424) 332-4800
Facsimile: (424) 332-4749

*Attorneys for Defendants and Counterclaim Plaintiffs Netflix US, LLC; Netflix Studios, LLC; Netflix CPX, LLC; and Netflix CPX International B.V.*

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Evil Genius Games, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>Netflix CPX, LLC; Netflix CPX International B.V.,<br><br>Defendants. | Case No.: 2:23-cv-08117-MCS-RAO<br><br>**COUNTERCLAIMS FOR:**<br><br>**(1) BREACH OF CONTRACT,**<br><br>**(2) TRADEMARK INFRINGEMENT,**<br><br>**(3) COPYRIGHT INFRINGEMENT, AND**<br><br>**(4) DECLARATORY JUDGMENT** |
| Netflix CPX, LLC; Netflix CPX International B.V.; Netflix US, LLC; Netflix Studios, LLC,<br><br>Counterclaim Plaintiffs,<br><br>v.<br><br>Evil Genius Games, Inc.,<br><br>Counterclaim Defendant. | |

Defendants and Counterclaim Plaintiffs Netflix CPX, LLC; Netflix CPX International B.V.; Netflix, US, LLC; and Netflix Studios, LLC (together, "Netflix") allege the following facts in support of their counterclaims for relief against Plaintiff and Counterclaim Defendant Evil Genius Games, Inc. ("Evil Genius"):

## **INTRODUCTION**

1.     Netflix brings the instant counterclaims to stop Evil Genius's blatant and ongoing misuse of Netflix's confidential and valuable intellectual property concerning the highly-anticipated *Rebel Moon* film franchise.   *Rebel Moon* is the brainchild of the visionary director, Zack Snyder, who for more than three decades has been developing the *Rebel Moon* cinematic universe, films, storylines, characters, themes, and visual worlds. Netflix, in turn, invested considerable resources to bring that world to its members.

2.     In late 2022, Netflix granted Evil Genius a license to develop a *Rebel Moon*-themed tabletop roleplaying game.   Pursuant to a February 1, 2023 license agreement ("Agreement"), Netflix entrusted Evil Genius with valuable intellectual property related to *Rebel Moon*, including highly confidential story details, scripts, artwork, and other assets—much of which was provided to Evil Genius by Mr. Snyder himself over the course of several confidential working sessions.

3.     Not surprisingly, Evil Genius's license to use Netflix's intellectual property was both extremely narrow in scope and included important safeguards.   First, the license provided that Netflix would own all works created by Evil Genius during the term of the license relating to the license or in any way derived from *Rebel Moon*.   Second, the Agreement required Evil Genius to obtain Netflix's prior written approval for any public-facing communications concerning *Rebel Moon*.   Third, the Agreement required multiple stages of approval from Netflix for both game and marketing materials.   Finally, the Agreement prohibited Evil Genius from disclosing any confidential information relating to *Rebel Moon*.

4.     Notwithstanding these clear contractual limitations, Evil Genius violated its license and infringed Netflix's copyrights and trademarks by repeatedly treating Netflix's

*Rebel Moon* IP as its own.  Evil Genius intentionally disclosed and distributed confidential images and story details—which Netflix had not approved—at a gaming convention and on its own website, and then offered an unapproved *Rebel Moon* game for pre-sale—all without Netflix's authorization.

5.     These were serious breaches of the Agreement that harmed Netflix's substantial investments in *Rebel Moon*.  Highly-anticipated "tentpole" films like *Rebel Moon*, made by a director with an active, engaged fanbase, require careful rollout of any advance information and a deliberate marketing campaign.  And yet, when Netflix alerted Evil Genius to these material breaches, Evil Genius brazenly claimed it had done nothing improper.

6.     Accordingly, Netflix terminated the Agreement—and Evil Genius's license—but Evil Genius's breaches and infringement only continued.  Under the Agreement, upon termination, Evil Genius was required to immediately stop all use of *Rebel Moon* material and either destroy or return it to Netflix.  Evil Genius has refused to destroy or return any *Rebel Moon* material to Netflix.  Instead, it has claimed as its own the *Rebel Moon* game materials it was hired to create for Netflix, including the so-called "*Rebel Moon* Bible"—based on the *Rebel Moon* franchise, and the vast majority of which is based on hours of direct access that Netflix provided to Mr. Snyder, during which he described numerous expressive elements of the *Rebel Moon* universe, story arc, and characters.  The *Rebel Moon* materials were created during the term of the license and relate to the license and/or were derived from *Rebel Moon* and therefore belong to Netflix.  In fact, at no point prior to a dispute arising between the parties did Evil Genius claim that the *Rebel Moon* Bible was anything more than a "deliverable" under the Agreement.

7.     Evil Genius went so far as to file a lawsuit (ECF No. 1) and launch a PR campaign based on the deliberately false narrative that it owns the *Rebel Moon* materials.  Among numerous misrepresentations, Evil Genius's Complaint includes the verifiably false statement that "[w]hen the parties started working with each other in early-2023," Netflix had only "a *Rebel Moon* movie script, some rough ideas for the *Rebel Moon*

universe, and some *cursory graphical assets*.  But the *script was missing background information*." *Id.* ¶ 19 (emphases added).  In reality, when Netflix and Evil Genius started working together, it was **after two full *Rebel Moon* movies had *finished production***.

8.    Because Evil Genius's false allegations do nothing to change the fact that Netflix owns all works created in connection with the license, the only explanation for their inclusion in Evil Genius's Complaint is as an attempt to gin up support for its PR campaign.  But it should surprise no one that Zack Snyder—who has been developing his vision for *Rebel Moon* for more than three decades and had finished production of two *Rebel Moon* movies before Evil Genius ever began work—did not need Evil Genius's two months of work product to fill in any alleged gaps.

9.    Evil Genius's Complaint and PR campaign also make clear that Evil Genius has continued to breach the Agreement by using licensed *Rebel Moon* IP *after* Netflix terminated its license, including by finishing the game in order to tell the public that "[a]s of today, the [*Rebel Moon*] game is ready to be released and enjoyed by fans worldwide."

10.    Netflix therefore brings these counterclaims for breach of contract, copyright infringement, and trademark infringement seeking, among other relief, (1) a declaratory judgment that Netflix, not Evil Genius, owns the *Rebel Moon* Bible and related items, including the "Player's Handbook," the "Game Master's Guide," and any other *Rebel Moon* IP, and (2) an order requiring Evil Genius to cease all further use of and return these same assets to Netflix.

## JURISDICTION AND VENUE

11.    This Court has subject-matter jurisdiction over all counterclaims alleged herein under 28 U.S.C. §§ 1331, 1338, and 1367.  The Court has federal question jurisdiction over Netflix's second and third counterclaims for trademark infringement and copyright infringement, because these claims arise under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) and the Copyright Act (17 U.S.C. § 101 *et seq.*), respectively.  The Court has supplemental jurisdiction over Netflix's first and fourth counterclaims for breach of contract and declaratory judgment, respectively, because these claims are so related to

Netflix's trademark and copyright claims that they form part of the same case or controversy under Article III of the United States Constitution.

12.     This Court has personal jurisdiction over Evil Genius because Evil Genius has expressly submitted to this Court's exercise of personal jurisdiction under the parties' Agreement, and Evil Genius has its principal place of business in the State of California.

13.     Venue is proper because Evil Genius has expressly authorized venue in the United States District Court for the Central District of California.

## PARTIES

14.     Defendant and Counterclaim Plaintiff Netflix CPX, LLC is a limited liability company organized under the laws of the State of Delaware, with its principal place of business in Los Angeles, California.  Netflix CPX, LLC licenses, for consumer products, the copyrights and other exclusive rights in content distributed by Netflix US, LLC.

15.     Defendant and Counterclaim Plaintiff Netflix CPX International B.V. is a Dutch entity organized under the laws of the Netherlands, with its principal place of business in Amsterdam, the Netherlands.  Netflix CPX International B.V. licenses, for consumer products, the copyrights and other exclusive rights in content distributed by Netflix US, LLC.

16.     Counterclaim Plaintiff Netflix US, LLC is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Los Angeles, California.  Netflix US, LLC owns or controls the copyrights or exclusive rights in the content that it or its affiliates produce or distribute.

17.     Counterclaim Plaintiff Netflix Studios, LLC is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Los Angeles, California.

18.     Plaintiff and Counterclaim Defendant Evil Genius Games, Inc. is a corporation organized under the laws of the State of Delaware, with its principal place of business in San Mateo, California.  Evil Genius is a developer of tabletop roleplaying

games, including games based on feature films.  Evil Genius's owner and chief executive officer is David T. Scott.

## FACTUAL ALLEGATIONS

### I.     Netflix's Highly-Anticipated *Rebel Moon* Films.

19.    Netflix is one of the world's largest and best-known entertainment and media companies.  Netflix operates a subscription-based video streaming service that allows its members to watch television series and films and play games on internet-connected devices.  Netflix has produced some of the world's most popular and critically-acclaimed content.

20.    This December, Netflix will release and distribute the first installment of the highly-anticipated *Rebel Moon* film franchise, based on a vision Zack Snyder has been developing since he finished film school in the late 1980s.  As one publication recently put it, Mr. Snyder—whose iconic films include *300*, *Watchmen*, and *Justice League*—created, in *Rebel Moon*, "not just one world but a sprawling menagerie of planets, full of cyborg warriors with molten-metal swords, giant half-humanoid arachnids, and ancient robots."  Netflix will release the second *Rebel Moon* film in April 2024.

21.    Mr. Snyder and his team completed production on *both* of the forthcoming *Rebel Moon* films on December 2, 2022—that is, they finished filming the movies, leaving only post-production work like editing and adding visual effects and music.

22.    Netflix owns and/or controls the copyrights to the *Rebel Moon* screenplay, which has been registered with the U.S. Copyright Office (the "*Rebel Moon* Registered Work").[1]  Netflix also owns and/or controls the rights to, and/or has common law rights in, protectable marks in *Rebel Moon* ("*Rebel Moon* Trademarks").  Netflix also has pending registration applications bearing serial numbers 97387437 and 97690666, listing, in each case, Netflix Studios, LLC as the "owner".

---

[1] *See* Copyright Registration No. PAu004131282.

**II.      Netflix Licenses Certain *Rebel Moon* IP to Evil Genius to Create a Tabletop Roleplaying Game for Netflix.**

23.      As part of the release strategy for *Rebel Moon*, in November of 2022, Netflix solicited proposals from various partners for the right to develop a tabletop roleplaying game based on the *Rebel Moon* screenplay, as well as the film imagery derived therefrom, and the overall universe created by Mr. Snyder.  A tabletop roleplaying game is a social game in which participants control and act out a character in an evolving story mediated by a "game master" and played according to a rulebook.

24.      Netflix's first meeting with Evil Genius was on November 17, 2022.  Evil Genius presented its first pitch to Netflix on December 9, 2022.

25.      Netflix entered into the Overall Merchandising License Agreement (the "Agreement") with Evil Genius on February 1, 2023.

26.      The Agreement granted Evil Genius a limited license to use the following portions of the *Rebel Moon* Registered Work and films derived therefrom, as well as the *Rebel Moon* Trademarks: the *Rebel Moon* name and logo, character names, and graphic assets or other artwork relating to the films as Netflix may provide (collectively termed "Licensed Property" in the Agreement and also referred to herein as the "*Rebel Moon* IP") for the sole purpose of developing a tabletop roleplaying game system, including related sourcebooks, box sets, custom dice, 3D miniatures, related apparel, and other items (collectively termed "Licensed Articles" in the Agreement and also referred to herein as the "*Rebel Moon* Game").  In accordance with the Agreement, Netflix provided Evil Genius with graphic assets and other artwork for use in developing the game, including over 500 advance images and conceptual art from the film.

27.      The Agreement makes clear that all intellectual property created in connection with this license would belong to Netflix, including all intellectual property "adapted, derived from, or includ[ing]" the *Rebel Moon* IP (termed "Licensor Materials" in the Agreement).  Specifically, Evil Genius acknowledged in Section 19 of the Agreement that:

> [O]wnership of all works created, conceived, or otherwise produced during the License Term in connection with the License including any adaptations, modifications or derivatives thereof ("Licensor Materials") shall vest in the Licensor . . . [and] constitute "works made for hire" within the meaning of the US Copyright Act of 1976, as amended, and shall be deemed transferred and assigned to Licensor promptly upon creation without any further action by any Party.  Further, Licensee hereby assigns and conveys to Licensor all trademarks, service marks, trade dress, titles, or other rights in and to the Licensed Property Licensee may obtain (or which vest in Licensee under its exercise of the License).  If any Licensor Materials are not considered "works made for hire" . . . , Licensee hereby irrevocably assigns all right, title, and interest in such Licensor Materials to Licensor and shall take all steps reasonably necessary to assist Licensor to effectuate such assignment.

Consistent with the Agreement's assignment of all works created in connection with the license to Netflix, Section 19 also provides that "[a]ll uses of the Licensed Property, and the associated goodwill, inure to Licensor's benefit."

28.     Evil Genius further acknowledged that the only intellectual property it would retain is "property it developed and owned prior to the effective date of th[e] Agreement" (*e.g.*, game mechanics), and even that property would belong to Netflix if it was "adapted, derived from or includes the" *Rebel Moon* IP.

29.     The Agreement also imposed strict limitations on Evil Genius's ability to use or distribute the *Rebel Moon* IP.

30.     For example, Section 12 of the Agreement required Evil Genius to obtain Netflix's "prior written approval," via an "online approval portal," before distributing any "marketing, advertising or promotional materials or communications that use or reference" the *Rebel Moon* IP, or any and "all other material(s) which use or reference" the *Rebel Moon* IP.  Section 12 provided that Netflix would approve or disapprove such submissions within 10 business days, and that "submissions are deemed 'disapproved' if [Netflix] does not affirmatively approve within this window."  Evil Genius was further required to submit marketing materials for Netflix's approval at four different phases of game development.

And it was required to submit materials relating to the *Rebel Moon* Game at three different phases (preliminary product concept, design, and pre-production).

31.     In Section 26 of the Agreement, Evil Genius also agreed to treat as confidential, and to not disclose, any information it learned that is confidential to Netflix. It further specifically agreed to "not release, distribute or sell" the *Rebel Moon* Game or aspects thereof "containing spoilers of not-yet-released seasons, sequels, spin-offs etc." Evil Genius also agreed that any such aspects of the *Rebel Moon* Game that did contain spoilers would be subject to Netflix's "express prior written approval" and be "stored/warehoused with highest security to prevent unauthorized access, leaks and/or public access."   Evil Genius further agreed its failure to adhere to these terms "shall constitute a material breach of th[e] Agreement."

32.     Under the Agreement's Schedule A, Evil Genius also agreed to display "permanently" the required notice, "REBEL MOON ™/© Netflix. Used with permission" ("Legal Notice") on all *Rebel Moon* Game materials and associated marketing materials, thereby providing notice of Netflix's registered, protectable marks in *Rebel Moon*.

### III.     Netflix Provides Access to Mr. Snyder for Evil Genius to Develop Netflix's *Rebel Moon* Game.

33.     Evil Genius did not meet Mr. Snyder until January 30, 2023, well after Mr. Snyder had completed production on the two *Rebel Moon* films.  Evil Genius was provided opportunities to speak directly with Mr. Snyder to facilitate Evil Genius's development of the *Rebel Moon* Game.

34.     In a series of meetings, Mr. Snyder provided Evil Genius with an extensive overview of the *Rebel Moon* universe and story arc, including countless confidential details and spoilers.  As part of and in connection with its license to create the *Rebel Moon* Game, Evil Genius recorded these conversations and documented the *Rebel Moon* IP and spoilers in the so-called *Rebel Moon* Bible, a compendium of the *Rebel Moon* universe totaling

more than 220 pages.[2]  The *Rebel Moon* Bible describes numerous expressive elements of the films' narrative and visual world, and comprises *Rebel Moon* IP, including story details, scripts, images, and other *Rebel Moon* assets.  All of these elements were adapted or derived from, or include, the *Rebel Moon* Registered Work or Licensed Property, and they were all created "in connection with" the license.  They are, accordingly, Licensor Materials owned by Netflix.

35.    In fact, Evil Genius's contemporaneous documents acknowledge that the *Rebel Moon* Bible was created in connection with the license and is thus Netflix's property. For example, in a March 2023 email to Netflix, Evil Genius's CEO, David Scott, described the *Rebel Moon* Bible as a "major deliverable" under the Agreement.  And the *Rebel Moon* Bible itself expressly notes that its "contents are based on the *Rebel Moon* Buff Script (as revised November 6, 2021), advance and conceptual art and images provided [by Netflix] through PIX (2-10-2023), and from information gathered from a series of weekly conversations with the IP creators [*i.e.*, Mr. Snyder]."

36.    Evil Genius relied on the *Rebel Moon* Bible—and the *Rebel Moon* IP within it—to develop the *Rebel Moon* Game, as well as its Player's Handbook and the Game Master's Guide, and other graphic assets.  The *Rebel Moon* Bible and these other materials are clearly works "created, conceived, or otherwise produced during the License Term in connection with the License," or "adaptations, modifications or derivatives thereof."  These assets thus "vest[ed] in [Netflix]" upon their creation.  They are also deemed works made for hire within the meaning of the US Copyright Act of 1976, and, to the extent necessary, were "transferred and assigned to [Netflix] promptly upon creation without any further action by any Party."  And even if these materials are "not considered 'works made for hire' . . . ," Evil Genius nevertheless "irrevocably assign[ed] all right, title, and interest" in them to Netflix, under Section 19 of the Agreement.

---

[2] To the extent Evil Genius documented the *Rebel Moon* IP in the *Rebel Moon* Bible for some purpose *other than* developing the *Rebel Moon* Game, such conduct would exceed the limited scope of its License, and is thus an unauthorized, infringing derivative work.

**IV.   Evil Genius Discloses Confidential, Unapproved *Rebel Moon* IP.**

37.   Less than three months after agreeing to maintain strict confidentiality of the *Rebel Moon* IP and to obtain Netflix's approval for disclosing or distributing any materials referring to that IP, Evil Genius distributed confidential *Rebel Moon* IP, without Netflix's approval, at a popular gaming trade show.

38.   In April 2023, Evil Genius hosted a seminar titled "Sneak Peek into the *Rebel Moon* TTRPG [*i.e.*, tabletop roleplaying game]" at the Game Manufacturers Association's GAMA Expo in Reno, Nevada—a trade show for the tabletop games industry.  As Evil Genius told Netflix, the GAMA Expo is "a major trade show" that "caters to the largest hobby-related retailers . . . in the US."

39.   In advance of the Expo, Evil Genius assured Netflix that it would "not go into the [*Rebel Moon*] movie at all" and would abide by the Agreement's strict confidentiality provisions.  Netflix approved Evil Genius to discuss only certain, specific talking points, and Evil Genius confirmed its understanding of Netflix's narrow approval in writing.  For its part, Netflix sent a representative to provide an introduction to and short "sizzle reel" of the *Rebel Moon* film.  The seminar's attendees were required to sign a non-disclosure agreement, and their mobile devices were collected before the presentation given the highly confidential nature of what was being shared.

40.   During the seminar, however, Mr. Scott disclosed confidential *Rebel Moon* details that he had not previously cleared with Netflix and that were not among the talking points Netflix had approved.  For example, Mr. Scott played an approximately three-minute video clip of one of Evil Genius's highly confidential working sessions with Mr. Snyder, in which Mr. Snyder discussed sensitive details of the *Rebel Moon* world and spoilers of the upcoming films.  These sensitive spoilers were not discussed with Netflix in advance.  Netflix did not approve Mr. Scott's disclosures of *Rebel Moon* spoilers or of ideas that might not ultimately be included in the *Rebel Moon* franchise.  But instead of following Netflix's specific instructions, Mr. Scott prioritized his game pitch over his contractual obligations to Netflix.

41.     Mr. Scott then pitched retailers in attendance on pre-ordering the *Rebel Moon* Game as early as possible, with special incentive packages and pricing, and told attendees that Evil Genius would be demonstrating the *Rebel Moon* Game later that evening.  Evil Genius had not requested—and Netflix had not provided—the required approvals for Evil Genius to sell the *Rebel Moon* Game as pitched by Mr. Scott.

42.     At the rear of the seminar room, Evil Genius also placed a stack of printed postcards advertising special pre-order rates for the *Rebel Moon* Game, and featuring prominently—and leaking—previously undisclosed and/or unapproved box artwork for the *Rebel Moon* Game.  Evil Genius then further distributed these unauthorized postcards at other points and locations over the GAMA Expo's five days.  Evil Genius had not requested—and Netflix had not provided—the required approval to publicize the artwork featured on the postcards in this, or any other, manner.  And on information and belief, none of the postcards featured the required Legal Notice.

43.     Evil Genius also leaked on its own website certain game cover artwork featuring *Rebel Moon* IP, and listed the *Rebel Moon* Game for pre-order (despite the fact that Netflix had not approved this pre-sale).  Evil Genius similarly had not requested—and Netflix had also not provided—approval to publicize the artwork featured on the website in any manner, or to sell the *Rebel Moon* Game as advertised.  On information and belief, none of the *Rebel Moon* artwork on Evil Genius's website featured the required Legal Notice.  Netflix had not publicized or distributed this artwork prior to Evil Genius's posting on its website; at most, it had disclosed that the *Rebel Moon* Game was in development— at all times as part of its carefully planned marketing strategy.

44.     Unsurprisingly, the same unauthorized *Rebel Moon* artwork Evil Genius had leaked was soon shared widely on social media and gaming websites.

45.     On information and belief, customers were likely to be confused that the artwork Evil Genius distributed had either been approved by Netflix, or that Evil Genius— and not Netflix—had developed some or all of the *Rebel Moon* IP.

**V.    Evil Genius Refuses to Return, and Confirm It Will Not Use, Netflix's *Rebel Moon* IP.**

46.    When Netflix alerted Evil Genius to its failures to maintain confidentiality, its unauthorized disclosures of *Rebel Moon* IP and marketing materials, and its unauthorized pre-sales—all of which constituted material breaches of the Agreement—Evil Genius brazenly claimed it had done nothing improper.

47.    After Evil Genius refused to acknowledge its breaches of the Agreement, and with no guarantee that these harmful, unauthorized disclosures would not happen again, Netflix was forced to terminate the Agreement by notice dated May 25, 2023.  As of that date, Evil Genius's license to use *Rebel Moon* IP was terminated, and Evil Genius had no license to use any of Netflix's intellectual property.  Evil Genius was therefore obligated to, among other things, immediately "stop all use of the [*Rebel Moon* IP]."  *See* Agreement § 25(a)(i).

48.    The termination notice also triggered Evil Genius's obligation to "return (or destroy, if instructed by Licensor) all materials related to the [*Rebel Moon* IP] and all materials relating to [*Rebel Moon* IP] and [Netflix's] confidential information, and give written notice to [Netflix] of compliance with such instructions."  Evil Genius was required to return these materials by June 14, 2023 and to provide, no later than June 24, 2023, a final inventory of any remaining *Rebel Moon* Games, a final royalty report, and any sums due to Netflix.  *See id.* § 25(a)(iii)-(v).

49.    In Netflix's termination notice, and repeatedly thereafter, Netflix requested that Evil Genius return all of Netflix's intellectual property related to *Rebel Moon*, including the *Rebel Moon* Bible.  Netflix further repeatedly requested that Evil Genius confirm it would not use Netflix's *Rebel Moon* IP, including the *Rebel Moon* Bible.

50.    Evil Genius refused to comply with any of these post-termination obligations.  Instead, just as it did during the term of the Agreement, Evil Genius treated Netflix's *Rebel Moon* IP as its own.  Evil Genius refused to return the *Rebel Moon* Bible, Player's Handbook, Game Master's Guide, or any other *Rebel Moon* IP—all of which it was hired

by Netflix to create and for Netflix to own.  And when Netflix made clear that it had no intention of re-licensing its intellectual property to Evil Genius, Evil Genius launched a PR campaign urging the public to "help us convince Netflix to release our *Rebel Moon* TTRPG," and to "sign our petition, [] post on social media, [] to let Netflix know how you feel about their decision and what they should do next."

51.    Coincident with its PR campaign, Evil Genius filed the Complaint, which, among many other defects, claims that Netflix was not entitled to terminate the Agreement. Yet the Complaint admits that Evil Genius never complied with the marketing approval requirements of Section 12 of the Agreement, and never even mentions the fact that Evil Genius offered unapproved *Rebel Moon* game merchandise for pre-sale on its website, alongside unapproved artwork.

52.    Evil Genius's PR campaign and Complaint also make clear that Evil Genius has continued to use *Rebel Moon* IP to create unauthorized derivative works after Netflix terminated its license.  In the Complaint, Evil Genius alleges that in May 2023, when Netflix terminated the Agreement, the Player's Handbook and Game Master's Guide were "*in the final editing process*."  Compl. ¶ 23 (emphasis added).  On Evil Genius's website, it states that "[a]s of today, the [*Rebel Moon*] game is ready to be released and enjoyed by fans worldwide."  To the extent there was anything resembling a game prototype as of the termination date—which is itself a questionable claim given the license had been in effect for less than four months and Evil Genius had not submitted a single piece of material through Netflix's approval system—any such prototype would have been unreviewed by the filmmakers and unapproved by Netflix, as required by the license.  So, not only does Evil Genius's Complaint contain an admission that it continued its unauthorized use of Netflix's *Rebel Moon* IP after the Agreement was terminated, it contains an admission that Evil Genius did not comply with any of the contractual approval requirements that would be necessary for it to complete the game.

## VI.   Evil Genius's Actions Have Harmed Netflix's Substantial Investments in *Rebel Moon*.

53.   Major film investments like *Rebel Moon* require a strategic, comprehensive marketing and rollout strategy, carefully crafted to maximize fan interest and buzz for the franchise.   Evil Genius's actions described herein have frustrated Netflix's carefully planned marketing and rollout strategy for *Rebel Moon* and thus threatened its significant investments.

54.   Evil Genius failed to maintain strict confidentiality and leaked critical spoilers directly from *Rebel Moon*'s creator.   Evil Genius also distributed artwork and made pre-sales without Netflix's approval, thereby denying Netflix the control it expressly bargained for over the film's strategic rollout and the *Rebel Moon* IP's dissemination.

55.   Evil Genius also failed to affix the required Legal Notice to the Game, artwork, and other items, creating a likelihood that customers would believe— incorrectly—that Evil Genius, and not Netflix, developed some part of the *Rebel Moon* characters, story, and fictional universe.   At the same time, Evil Genius caused customers to believe—incorrectly—that Netflix endorsed the *Rebel Moon* Game and artwork, when Netflix had in fact not endorsed or approved them.   Evil Genius has simultaneously thus harmed Netflix's reputation for endorsing only articles it has expressly approved and the value of Netflix's protectable trademarks in *Rebel Moon* IP.

<u>**FIRST CLAIM FOR RELIEF**</u>

**BREACH OF CONTRACT**

56.   Netflix incorporates the foregoing paragraphs as though set forth fully herein.

57.   The Agreement is a contract between Netflix and Evil Genius.

58.   Netflix has complied fully with the terms and conditions of the Agreement and fulfilled each obligation on its part to be performed, except for those obligations that have been excused or waived.

59.   Evil Genius materially breached the Agreement in at least the following ways:

a.  Evil Genius breached Section 12 of the Agreement by failing to submit Licensed Articles at any of the three required stages of development before offering them for pre-sale;

b.  Evil Genius breached Section 12 of the Agreement by distributing unapproved marketing materials, including unapproved artwork contained on postcards at the GAMA Expo and on its website;

c.  Evil Genius breached Section 26 of the Agreement by disclosing confidential *Rebel Moon* material and *Rebel Moon* spoilers at the GAMA Expo, including a recording of Mr. Snyder discussing *Rebel Moon* spoilers;

d.  Evil Genius breached Section 26 of the Agreement by failing to store Licensed Articles with the highest security to prevent unauthorized access, leaks, and/or public access;

e.  Evil Genius breached Section 25 of the Agreement by failing to return Licensed Property, including the *Rebel Moon* Bible, by June 14, 2023;

f.  Evil Genius breached Section 25 of the Agreement by failing to stop use of the Licensed Property, including the *Rebel Moon* Bible, upon termination of the Agreement;

g.  Evil Genius breached Section 25 of the Agreement by failing to provide a final inventory of any remaining Licensed Articles, a final royalty report, and any sums due to Netflix by June 24, 2023; and

h.  Evil Genius breached Section 20(a) and Schedule A of the Agreement by failing to include the required Legal Notice on all *Rebel Moon* Game materials and associated marketing materials.

60.  As a direct and proximate result of Evil Genius's breaches, Netflix has been injured in an amount to be proven at trial.

### SECOND CLAIM FOR RELIEF

### TRADEMARK INFRINGEMENT

### LANHAM ACT, SECTION 43(A) (15 U.S.C. § 1125(A))

61.    Netflix incorporates the foregoing paragraphs as though set forth fully herein.

62.    Netflix owns and/or controls the rights to, and/or has common law rights in, protectable marks in *Rebel Moon*.  Netflix also owns valid, protectable marks in *Rebel Moon* subject to registration applications bearing serial numbers 97387437 and 97690666.

63.    Under the Agreement, Netflix provided Evil Genius a limited license to use Netflix's *Rebel Moon* marks, subject to the Agreement's terms and conditions. Specifically, under Section 20(a) and Schedule A of the Agreement, Evil Genius's license to use *Rebel Moon* marks extended only to use of those marks with the required Legal Notice permanently affixed to all Licensed Articles and Collateral Materials, as defined in the Agreement.

64.    In failing to affix the required Legal Notice to packaging and marketing materials for the *Rebel Moon* Game and related artwork, and failing to obtain Netflix's approval for any artwork incorporating the *Rebel Moon* marks, Evil Genius exceeded the scope of the limited license granted by Netflix.  Evil Genius's unauthorized incorporation of the *Rebel Moon* marks in its artwork, marketing materials, and other Game-related materials is likely to result in customer confusion, in that customers may believe— incorrectly—that Evil Genius, and not Netflix, is the source of the associated *Rebel Moon* IP.

65.    Evil Genius's unauthorized incorporation of the *Rebel Moon* marks in these materials also results in false endorsement, in that there is a likelihood customers may believe—incorrectly—that Netflix authorized the versions of the *Rebel Moon* Game Evil Genius made available for pre-sale and the artwork Evil Genius distributed at the GAMA Expo, on its website, or by other means.

66.    Evil Genius's actions were deliberate and willful.  Evil Genius understood it was required to affix the Legal Notice to all uses of Licensed Property, and to seek Netflix's

approval before incorporating the marks in the Licensed Articles and marketing materials, but it refused to do so.

67.     As a direct and proximate result of Evil Genius's infringement, Netflix has been injured in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF
## COPYRIGHT INFRINGEMENT
## COPYRIGHT ACT (17 U.S.C. § 101 *ET SEQ.*)

68.     Netflix incorporates the foregoing paragraphs as though set forth fully herein.

69.     Netflix owns and has registered valid copyrights in the *Rebel Moon* Registered Work, namely the *Rebel Moon* screenplay.

70.     Netflix granted a limited license to Evil Genius to use a portion of the *Rebel Moon* Registered Work and other content derived therefrom—the *Rebel Moon* IP—in the Agreement.

71.     Pursuant to the Agreement, Netflix owns all works that were "produced during the License Term in connection with the License" and/or were "adapted, derived from or include[] the" *Rebel Moon* IP, which includes the *Rebel Moon* Bible; the *Rebel Moon* artwork distributed by Evil Genius on postcards and its website; the *Rebel Moon* narrative and other expressive elements distributed by Evil Genius at the GAMA Expo, including a clip from a video of a confidential working session with Mr. Snyder; and the *Rebel Moon* Game, its Player's Handbook, and the Game Master's Guide.  Each of these works also constitutes a derivative work of the *Rebel Moon* Registered Work.

72.     Evil Genius exceeded the scope of the license in the Agreement, violated a condition precedent of the license, and infringed Netflix's copyrights.  Specifically, Evil Genius has unlawfully reproduced, prepared derivative works from, distributed, and/or publicly performed and infringed Netflix's copyrights in at least the following ways:

    a.     Evil Genius distributed and offered for sale the *Rebel Moon* Game and other materials containing *Rebel Moon* IP, and derived from the *Rebel*

*Moon* Registered Work, without authorization and outside the scope of the license, rendering them unauthorized derivative works;

b.   Evil Genius reproduced and distributed *Rebel Moon* artwork on postcards at the GAMA Expo, without authorization and outside the scope of the license, rendering it an unauthorized derivative work;

c.   Evil Genius reproduced and distributed *Rebel Moon* artwork on its website without authorization and outside the scope of the license, rendering it an unauthorized derivative work;

d.   Evil Genius reproduced, distributed, and performed *Rebel Moon* IP contained in the confidential working video with Mr. Snyder at the GAMA Expo, without authorization and outside the scope of the license, rendering it an unauthorized derivative work; and

e.   On information and belief, Evil Genius continues to use and create unauthorized derivative works from the *Rebel Moon* IP and *Rebel Moon* Registered Work, including by taking the Player's Handbook and Game Master's Guide from their unfinished state in May 2023 to being "ready to be released."

73.   Evil Genius's acts of infringement are knowing, deliberate, and willful, and in complete disregard for Netflix's rights.   Netflix instructed Evil Genius to cease its infringement and return the *Rebel Moon* IP, including the *Rebel Moon* Bible; Netflix made clear to Evil Genius, and the parties agreed, the *Rebel Moon* IP was strictly confidential and belonged to Netflix; and Evil Genius nonetheless refused to return the *Rebel Moon* Bible and other works when asked, and continued to use them.

74.   As a direct and proximate result of Evil Genius's infringement of Netflix's copyrights and exclusive rights under copyright, Netflix is entitled to its actual damages, in amounts to be proven at trial, pursuant to 17 U.S.C. § 504(b), or, in the alternative, at Netflix's election pursuant to 17 U.S.C. § 504(c), to statutory damages up to the amount of

$150,000 per infringed work, or such other amounts as may be proper under 17 U.S.C. § 504(c).

75.    Netflix is entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

### FOURTH CLAIM FOR RELIEF

### DECLARATORY JUDGMENT (28 U.S.C. § 2201)

76.    Netflix incorporates the foregoing paragraphs as though set forth fully herein.

77.    There is presently an actual and substantial controversy between Netflix and Evil Genius over the ownership of, and Evil Genius's rights to retain and use, the *Rebel Moon* Bible and other *Rebel Moon* IP.

78.    As set forth above, Netflix contends it is the valid copyright owner of the *Rebel Moon* Bible and all *Rebel Moon* IP that Evil Genius distributed without authorization, including the *Rebel Moon* artwork distributed by Evil Genius on postcards and its website; the *Rebel Moon* narrative and other expressive elements distributed by Evil Genius at the GAMA Expo, including a clip from a video of a confidential working session with Mr. Snyder; and the *Rebel Moon* Game, its Player's Handbook, and the Game Master's Guide.  Netflix further contends that Evil Genius has no further rights to retain and/or use the same.

79.    Evil Genius disputes Netflix's ownership, and has asserted an ongoing right to use and/or retain the *Rebel Moon* Bible and other *Rebel Moon* IP.  Evil Genius likewise contends it owns the Game, its Player's Handbook, the Game Master's Guide, and certain graphic assets, all of which contain *Rebel Moon* IP.

80.    Netflix is subject to a real and reasonable apprehension that Evil Genius will continue to infringe the *Rebel Moon* IP, and improperly assert that it has protectable rights in the *Rebel Moon* Bible that Netflix has supposedly infringed.

81.    Netflix therefore seeks a declaration of its rights and legal relations as to Evil Genius and the *Rebel Moon* IP.

## **PRAYER FOR RELIEF**

WHEREFORE, Netflix prays the Court enter judgment against Evil Genius and grant the following relief:

    A.    Damages in amount to be proven at trial;

    B.    A declaratory judgment that:

        1.    Netflix owns the *Rebel Moon* Bible and Evil Genius has no rights therein, including any right to continue to possess or use the *Rebel Moon* Bible;

        2.    Netflix owns the *Rebel Moon* Game, its Player's Handbook, and the Game Master's Guide and Evil Genius has no rights therein, including any right to continue to possess or use the *Rebel Moon* Game, its Player's Handbook, and the Game Master's Guide;

        3.    Evil Genius does not own any valid copyrights in the *Rebel Moon* IP, including any aspect of the *Rebel Moon* Bible, the *Rebel Moon* artwork distributed by Evil Genius on postcards and its website, the *Rebel Moon* narrative and other expressive elements distributed by Evil Genius at the GAMA Expo, the *Rebel Moon* Game, its Player's Handbook, and the Game Master's Guide; and

        4.    Any further use of the *Rebel Moon* Bible and/or *Rebel Moon* IP by Evil Genius would constitute infringement of Netflix's copyrighted works and protectable marks.

    C.    An order enjoining Evil Genius from using or retaining the *Rebel Moon* Bible, the *Rebel Moon* Game, its Player's Handbook, and the Game Master's Guide, or any other *Rebel Moon* IP, in whole or in any part;

    D.    Netflix's attorneys' fees and costs; and

    E.    All such further and additional relief, in law or in equity, to which Netflix may be entitled or which the Court deems just and proper.

Dated:  November 1, 2023

Respectfully submitted,

By: _/s/ Neema T. Sahni_____
Neema T. Sahni

Neema T. Sahni (Bar No. 274240)
NSahni@cov.com
J. Hardy Ehlers (Bar No. 287528)
JEhlers@cov.com
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067-4643
Telephone: (424) 332-4800
Facsimile: (424) 332-4749